

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONICA PATINO, | § | |
| Plaintiff, | § | |
| v. | § | No. 3:15-CV-618-BF |
| CAROLYN W. COLVIN, Acting | § | |
| Commissioner of Social Security, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Monica Patino ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claims for a period of disability and disability insurance benefits under Title II of the Social Security Act, pursuant to Title 42, United States Code, Section 405(g). For the following reasons, the final decision of the Commissioner is REVERSED and REMANDED for proceedings consistent with this opinion.

## BACKGROUND

Plaintiff alleges that she is disabled due to a variety of ailments, including low-back pain with a radiculopathy, degenerative disc disease, lumbar facet arthritis, neuropathy, and depression. *See* Tr. [ECF No. 9-3 at 32]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on November 7, 2013 in Dallas, Texas before ALJ Carol K. Bowen. *Id.* [ECF No. 9-3 at 31]. Also present at the hearing was Vocational Expert ("VE") Susan Brooks. *See id.* [ECF No. 9-3 at 31]. At the time of the November 7, 2013 hearing, Plaintiff was 37 years old. *Id.* [ECF No.9-3 at 32]. Plaintiff has past work experience as a loader/unloader, a medical assistant, a front desk clerk, and a babysitter. *Id.* [ECF No. 9-3 at 49-50]. Plaintiff has a GED. *Id.* [ECF No. 9-3 at 35]. Plaintiff has not engaged in substantial gainful activity since October 24, 2011. *Id.* [ECF No. 9-3 at 32].

The ALJ proposed to the VE a hypothetical individual of the same age, education, and work history as Plaintiff. *Id.* [ECF No. 9-3 at 50]. The hypothetical individual could perform the lifting demands of light work, but standing and walking was limited to two hours in a standard work day, sitting for six hours in a standard work day, and with the option to stand or stretch for about two minutes every 30 minutes. *Id.* [ECF No. 9-3 at 50]. The hypothetical individual could not operate foot controls, climb, crouch, or crawl. *Id.* [ECF No. 9-3 at 50]. The hypothetical individual could occasionally balance, stoop, or kneel, but could not work at unprotected heights or with hazardous moving machinery. *Id.* [ECF No. 9-3 at 50]. The hypothetical individual was capable of detailed, but not complex tasks, was to work in a routine work setting, and was capable of interacting with co-workers occasionally, but not capable of teamwork. *Id.* [ECF No. 9-3 at 50]. The VE testified that such a hypothetical individual could not perform Plaintiff's past work, but could perform the tasks of a telephone quotation clerk, a charge account clerk, and an order clerk. *Id.* [ECF No. 9-3 at 51]. However, the VE testified that the DOT does not address a stand and stretch or a 30 minute break. *Id.* [ECF No. 9-3 at 53].

On February 5, 2014, the ALJ issued a decision finding that Plaintiff has not been under a disability from October 24, 2011 through the date of her decision. *See id.* [ECF No. 9-3 at 15]. The ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, status post lumbar fusion, obesity status post gastric sleeve procedure, history of migraine headaches, and bipolar disorder. *See id.* [ECF No. 9-3 at 17]. However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *See id.* [ECF No. 9-3 at 17].

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry 10 pounds occasionally, and less than 10 pounds frequently, stand and walk 2 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday, with the option to stand and stretch for 2 minutes every 30 minutes. *See id.* [ECF No. 9-3 at 18-19]. The ALJ further determined that she could not operate foot controls, climb, crouch, crawl, or squat. *See id.* [ECF No. 9-3 at 19]. However, the ALJ determined that Plaintiff could occasionally balance, stoop, and kneel. *See id.* [ECF No. 9-3 at 19]. In addition, the ALJ concluded that Plaintiff must avoid working at unprotected heights or around hazardous moving machinery, and that she could perform detailed, but not complex tasks in a routine work setting, and could have occasional interaction with coworkers in jobs that do not require teamwork. *See id.* [ECF No. 9-3 at 19].

The ALJ determined that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. *See id.* [ECF No. 9-3 at 19]. The ALJ noted that, while Plaintiff alleged that she had bipolar disorder, due to the minimal treatment evidence regarding this condition, the state agency referred Plaintiff to have a consultative psychiatric examination. *See id.* [ECF No. 9-3 at 19]. The ALJ noted that at this examination, Plaintiff reported that she was prevented from working primarily due to her back pain. *See id.* [ECF No. 9-3 at 20]. While she also reported mood changes, with depression and anger, the ALJ observed that there was no record of specialized mental health care and her primary care physician only prescribed Xanax and Celexa. *See id.* [ECF No. 9-3 at 20]. The ALJ further noted that the consulting psychiatrist observed that there was no evidence showing that Plaintiff was receiving any mood regulating medication, despite her complaints of mood swings. *See id.* [ECF No. 9-3 at 20]. The ALJ

3

also noted that while Plaintiff sought to minimize her involvement with household chores at her hearing, testifying that she only watched her grandson one time, at the examination, Plaintiff reported that her activities of daily living included watching her grandson and washing dishes. *See id.* [ECF No. 9-3 at 20]. Further, the ALJ noted that the consulting psychiatrist characterized her routines by stating that "she immerses her day dealing with family," and that upon mental status examination, the consulting psychiatrist noted that Plaintiff was "rather quick to respond," and that although she had difficulties with abstraction, judgment, and insight, she performed well on mathematical calculations, and had adequate memory functions. *See id.* [ECF No. 9-3 at 20].

The ALJ noted that in December of 2011, after failing conservative treatment for lumbar spondylosis and radiculitis, Plaintiff underwent decompressive lumbar laminectomy, discectomy, and foraminotomy L5-S1 with posterior lumbar interbody fusion at L5-S1, and that subsequent recovery was unremarkable until Plaintiff slipped and fell at home, and in March of 2012, she reported new pain complaints to her orthopedist. *See id.* [ECF No. 9-3 at 20]. The ALJ noted that Plaintiff reported at that time that she stopped taking her pain medication, she was using a bone growth stimulator daily, and she was advised to take three sessions of aquatic therapy per week. *See id.* [ECF No. 9-3 at 20]. However, in April of 2012, Plaintiff reported that she only attended one session, and that she had exacerbated pain. *See id.* [ECF No. 9-3 at 20].

The ALJ observed that in June of 2012, a CT-scan of Plaintiff's lumbar spine showed degenerative changes, worst at L5-L6, with mild broad-based posterior disc bulge, mild bilateral nerve root sleeve amputation, and mild multi-level anterior spurring. *See id.* [ECF No. 9-3 at 20]. The ALJ noted that in July of 2012, Plaintiff underwent hardware injections, after receiving insufficient relief from extended relief morphine, but reported no relief from this procedure. *See id.*

[ECF No. 9-3 at 20]. The ALJ observed that, despite her pain complaints, physical examination in August of 2012 showed only paraspinous and lumbar tenderness, with no pain in the great trochanter and sacroiliac joint, mild spasm, and good to normal muscle strength in the bilateral lower extremities. *See id.* [ECF No. 9-3 at 20].

The ALJ noted that after August of 2012, Plaintiff's pain management was supervised by her primary care physician, and those treatment records note narcotic pain medication refills, but did not document any physical findings. *See id.* [ECF No. 9-3 at 20]. The ALJ noted that the treatment records also did not indicate what degree of relief Plaintiff received nor documented any changes in condition that might be expected in the first year after her lumbar fusion. *See id.* [ECF No. 9-3 at 21]. The ALJ noted that in June of 2013, Plaintiff sought emergency treatment for her back pain, and reported that her pain had not responded to 16 Tylenols per day, in addition to her narcotic prescription, and that she again sought emergency treatment in September of 2013 for back pain related to taking less than her prescribed regimen, but that upon examination, Plaintiff only had mild tenderness to palpation over the lumbar spine, normal muscle strength in all extremities, normal sensation to light touch in all extremities, and a normal range of motion. *See id.* [ECF No. 9-3 at 21]. The ALJ noted that Plaintiff had a history of migraine headaches, but only sought emergency treatment for headaches twice since October of 2011, and that Plaintiff does not have maintenance medication for migraine headaches. *See id.* [ECF No. 9-3 at 21]. The ALJ also noted that Plaintiff has a history of gastric sleeve surgery. *See id.* [ECF No. 9-3 at 21].

The ALJ noted that in September of 2013, Plaintiff's primary care physician submitted a statement stating that Plaintiff could lift and carry 10 pounds occasionally, and could stand and walk for less than 2 hours total in an 8 hour workday, and sit for 6 hours in an 8 hour workday. *See id.*

[ECF No. 9-3 at 21]. The ALJ noted that Plaintiff's primary care physician further opined that Plaintiff would need to alternate positions frequently, and that she would miss work 4 days per month. *See id.* [ECF No. 9-3 at 21]. The ALJ stated that she accorded this opinion some weight, to the extent it supports a finding that Plaintiff can lift and carry 10 pounds occasionally, and can sit for 6 hours in an 8 hour workday, but that the medical record, particularly the primary care physician's progress notes, did not show findings consistent with disabling severity, and accorded little weight to the restrictions that would preclude Plaintiff from full-time work. *See id.* [ECF No. 9-3 at 21].

The ALJ also noted that the state agency medical consultant found that Plaintiff could perform light work with two hours of standing and walking in an 8 hour workday, and the ALJ stated that she accorded this opinion great weight, but in viewing the evidence in a light most favorable to Plaintiff, found that Plaintiff was limited to lifting and carrying a maximum of 10 pounds, 2 hours of standing and walking, and that she must be able to stand and stretch at 30 minute intervals throughout the workday. *See id.* [ECF No. 9-3 at 21]. The ALJ further stated that Plaintiff's lumbar degenerative and post-surgical changes and obesity further precluded Plaintiff from climbing, crawling, or crouching, and also limited her to occasional balancing, stooping, and kneeling. *See id.* [ECF No. 9-3 at 21]. In addition, the ALJ stated that the pain and drowsiness associated with chronic pain management precluded Plaintiff from operating foot controls and from working at unprotected heights or around hazardous moving machinery. *See id.* [ECF No. 9-3 at 21].

While the state agency psychological consultant found Plaintiff capable of performing complex tasks, the ALJ found that Plaintiff was more limited than initially determined, and accorded the state agency psychological consultant's opinion little weight. *See id.* [ECF No. 9-3 at 22]. In

considering the cumulative effects of pain and pain medication, as well as Plaintiff's bipolar disorder, the ALJ found that Plaintiff was limited to performing detailed, but not complex tasks with occasional interactions with coworkers and no teamwork. *See id.* [ECF No. 9-3 at 22]. Because the ALJ determined that Plaintiff was only able to perform the physical demands of sedentary work, and the VE testified that Plaintiff's past work was classified as light and medium work, the ALJ found that Plaintiff was unable to perform her past relevant work. *See id.* [ECF No. 9-3 at 22]. The ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform. *See id.* [ECF No. 9-3 at 22]. The ALJ determined that Plaintiff could perform the tasks of the following sedentary occupations: a telephone quotation clerk, a charge account clerk, and an order clerk. *See id.* [ECF No. 9-3 at 23].

Plaintiff appealed the ALJ's decision to the Appeals Council. *See id.* [ECF No. 9-3 at 2]. On December 22, 2014, the Appeals Council affirmed the ALJ's decision. *See id.* [ECF No. 9-3 at 2]. Plaintiff subsequently filed this action in the district court on February 23, 2015. *See* Compl. [ECF No. 1].

## LEGAL STANDARDS

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

*Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); 20 C.F.R. § 404.1520(b)-(f)). The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits

is supported by substantial evidence and to whether the proper legal standards were utilized. *Greenspan*, 38 F.3d at 236 (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does "not re-weigh the evidence, try the issues *de novo*, or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Id.* (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)). Further, "[t]he ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-44-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure.").

## ANALYSIS

Plaintiff argues that the ALJ failed to properly weigh her treating specialist, Keith Harbour,

9

D.O.'s opinion, because she did not analyze the factors set out in Title 20, Code of Federal Regulations, Section 404.1527(c) ("Section 404.1527(c)"). *See* Pl.'s Br. [ECF No. 12 at 17]. Plaintiff argues that the ALJ failed to conduct a detailed analysis as required under *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000), and never discussed the Section 404.1527(c) factors applicable to her opinion. *See id.* [ECF No. 12 at 18]. Plaintiff points out that she was treated by Dr. Harbour as early as March 14, 2011, and saw him on numerous occasions, including on April 12, 2011, April 26, 2011, May 3, 2011, October 10, 2011, October 27, 2011, January 10, 2012, April 16, 2012, May 1, 2012, October 1, 2012, and December 3, 2012. *See id.* [ECF No. 12 at 21]. Plaintiff argues that the length and frequency of Plaintiff's treatment by Dr. Harbour supports Dr. Harbour's opinion because Section 404.1527(c)(2)(ii) states that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *See id.* [ECF No. 12 at 21] (citing 20 C.F.R. § 404.1527(c)(2)(ii)). Plaintiff further argues that Dr. Harbour's opinion deserves great weight, because it was supported by medical signs and laboratory findings, such as abnormal gait, decreased sensation, muscle spasms, and positive straight-leg-raise signs, and Section 404.1527(c)(3) states that more weight is given to an opinion that is supported by medical signs and laboratory findings. *See id.* [ECF No. 12 at 22] (citing 20 C.F.R. § 404.1527(c)(3)). In addition, Plaintiff argues that Dr. Harbour's opinions are consistent with the opinions of specialists Larry Kjeldgaard, D.O., and Cesar Duclair, M.D., in that Dr. Kjeldgaard noted that MRI and x-ray studies supported Plaintiff's allegations, and Dr. Duclair indicated that Plaintiff "has been through extensive conservative management and has not had significant long term sustainable improvement with time, rest, [physical therapy], oral meds, activity modification, or injections." *See id.* [ECF No. 12 at 22]. Therefore, Plaintiff argues that the ALJ's failure to assess

the Section 404.1527(c) factors here is not harmless error, because it is certainly conceivable, if not probable, that had the ALJ applied these factors, the ALJ would have come to a different conclusion. *See id.* [ECF No. 12 at 22].

The Commissioner argues in her response that the ALJ did consider the Section 404.1527(c) factors, and that a remand is not warranted, just because the ALJ did not signpost her way through her analysis. *See* Def.'s Resp. [ECF No. 13 at 7]. The Commissioner argues that the ALJ satisfied Section 404.1527(c)(2), which requires consideration of the type of relationship, by recognizing that Dr. Harbour was Plaintiff's primary care physician that took over her pain management after August of 2012. *See id.* [ECF No. 13 at 3]. The Commissioner argues that the ALJ considered the fact that Dr. Harbour provided refills on Plaintiff's narcotics pain medication, but did not document any physical findings, which is consistent with Section 404.1527(c)(2)(i)-(ii), which requires consideration of the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship. *See id.* [ECF No. 13 at 3-4]. The Commissioner further argues that the ALJ also addressed the supportability and consistency of Dr. Harbour's records under Section 404.1527(c)(3) and (4), finding that his opinion was inconsistent with his treatment notes, that his notes did not address the degree of relief Plaintiff achieved with treatment, nor any changes in condition that might be expected in the first year after a lumbar fusion, and that other evidence from the same time period Dr. Harbour treated Plaintiff showed, upon physical examination, positive straight leg raising and mild tenderness to palpation of the lumbar spine, normal range of motion of her back, normal strength in all extremities, normal gait, and intact sensation. *See id.* [ECF No. 13 at 4]. The Commissioner argues that the ALJ is permitted to reject all or a portion of a medical source's opinion when the overall evidence supports a contrary conclusion. *See id.* [ECF No. 13 at

4].

In the reply, Plaintiff argues that the only way the ALJ could avoid conducting the Section 404.1527(c) analysis is if there is controverting evidence from another treating or examining physician or if there is "good cause" to assign little or no weight to the physician's opinion, and there was no controverting first-hand evidence here, and while the Commissioner attempts to discredit Dr. Harbour's opinion, she does not argue that the ALJ had "good cause" to reject it. *See* Reply [ECF No. 14 at 2]. Further, Plaintiff argues that the ALJ never specifically discussed the regulatory factors, and never discussed how often or how long Plaintiff had been treated by Dr. Harbour. *See id.* [ECF No. 14 at 3]. In addition, Plaintiff argues that while the Commissioner claims that the ALJ addressed the supportability and consistency of Dr. Hourbour's opinion when she stated that his opinion was inconsistent with his treatment notes, the ALJ never identified the inconsistent evidence and merely broadly alluded to "the medical evidence of record." *See id.* [ECF No. 14 at 4]. Plaintiff also argues that while the Commissioner suggests that a detailed analysis of the factors was indicated by the ALJ's criticism that Dr. Harbour failed to identify what degree of relief Plaintiff achieved with treatment or any change that might be expected in her condition, the Commissioner does not explain how this discredits Dr. Harbour's opinions regarding Plaintiff's ability to stand, walk, maintain attention, and concentrate, or adhere to a regular work schedule. *See id.* [ECF No. 14 at 5]. Plaintiff argues that none of the Section 404.1527(c) factors require a treating physician to report the efficacy of treatment or discuss future changes in the patient's condition. *See id.* [ECF No. 14 at 5].

Section 404.1527(c) states in part the following:

> (c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors

12

in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

    (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

    (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.

20 C.F.R. § 404.1527(c). In *Newton v. Apfel*, the Fifth Circuit stated the following:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)(1)-(6)]. . . . This court [] holds that an ALJ is required to consider each of the § 404.1527[(c)(1)-(6)] factors before declining to give any weight to the opinions of the claimant's treating specialist. The ALJ failed to perform this analysis, which should be conducted on remand.

*Newton v. Apfel*, 209 F.3d 448, 453-56 (5th Cir. 2000). Similar to the facts in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Id.* at 458. Here, the ALJ rejected the opinions of Dr. Harbour, Plaintiff's long-term treating specialist, without an existing controverting treating or examining physician opinion. Therefore, pursuant to *Newton*, the ALJ is required to consider each of the Section 404.1527(c) factors prior to rejecting Dr. Harbour's opinions.

The Commissioner argues that the ALJ considered the Section 404.1527(c) factors, because the ALJ considered: (1) the type of relationship Plaintiff had with Dr. Harbour by recognizing that Dr. Harbour was Plaintiff's primary care physician that took over her pain management after August of 2012; (2) the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship, as evidenced by the ALJ's statement that Dr. Harbour provided refills on narcotics pain medication, but did not document any physical findings; (3) the supportability and consistency of Dr. Harbour's records by finding that his opinion was inconsistent with his treatment notes, that his notes did not address what degree of relief Plaintiff achieved with treatment, nor any change in condition that might be expected in the first year following lumbar fusion, and that other evidence from the time period Dr. Harbour treated Plaintiff showed, upon physical examination, positive straight leg raising and mild tenderness to palpation of the lumbar spine, but normal range of motion of her back, normal strength in all extremities, normal gait, and intact sensation. *See* Def.'s Br. [ECF No. 13 at 3-4].

While the considerations pointed out by the Commissioner may address some of the Section 404.1527(c) factors, the ALJ's discussion omits others. Absent from the ALJ's discussion is a consideration of the length of the treatment relationship and the frequency of examinations. 20 CFR

§ 1527(c)(2)(i)-(ii). While the Commissioner argues that the ALJ's statement that Dr. Harbour provided refills on narcotics pain medication, but did not document any physical findings addresses these factors, notably absent from this discussion is a consideration of the frequency of examinations and the length of treatment. While the ALJ stated in that portion of her decision that Plaintiff's primary care physician took over Plaintiff's pain management after August of 2012, as Plaintiff points out, Dr. Harbour has examined Plaintiff since 2011. *See id.* [ECF No. 9-3 at 20]; Pl.'s Br. [ECF No. 12 at 21]. Further absent from the ALJ's decision is any discussion regarding Keith Harbour, D.O.'s specialization, as a Doctor of Osteopathic Medicine, although the ALJ is to generally give more weight to the opinion of a specialist regarding medical issues related to his area of specialty than to the opinion of a non-specialist. 20 CFR § 1527(c)(5). Therefore, the ALJ's decision fails to show that he conducted a detailed analysis of Dr. Harbour's opinion in accordance with Section 404.1527(c).

The Commissioner argues that remand would not change the ALJ's decision. *See* Def.'s Br. [ECF No. 13 at 7]. However, "the Court is unable to say what the ALJ would have done had he weighed all relevant evidence of record." *Gerken v. Colvin*, No. 3:13-CV-1586-BN, 2014 WL 840039, at *7 (N.D. Tex. Mar. 4, 2013). The ALJ's decision is not supported by substantial evidence, because the Court is uncertain whether the ALJ would have given more weight to Dr. Harbour's opinion and would have found him disabled, if he conducted a more thorough analysis of the Section 404.1527(c) factors.

## **CONCLUSION**

For the reasons stated above, the final decision of the Commissioner is REVERSED and REMANDED for proceedings consistent with this opinion.

SO ORDERED, this 25 day of April, 2016.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE